Good afternoon. Good afternoon, Counsel. Can you hear me okay? Yes. Yes, yes, I can hear you. Ms. Allen, can you hear me all right? Yes, Your Honor. All right. Would the clerk call the next case, please? 3-24-0-4-5-3, In Re Marriage of Deepak Patel, Appellant and Benita Patel, Appellee. Ms. Allen, if you're ready to proceed? Yes, Your Honor, and I will reserve five minutes at the end for rebuttal as well. You'll have it. Thank you. Good afternoon. May it please the Court, Counsel, I come before this Court on two I'm sorry. I heard something. I come before this Court on two core issues relating to two sophisticated, high-earning parties who entered into a marital settlement agreement in 2020 relating to child support. That marital settlement agreement contains certain terms as to a cap on Deepak's income as well as a methodology for which child support was to be paid. Your Honor, the two core issues in this case relate to the trial court's order entered in June 2024, specifically the trial court's modification of support to the amount of $3,750 per month, which is the amount that was entered without any justification, which was an arbitrary, fanciful, and unreasonable amount. And the second issue on appeal is that relating to the $500,000 cap that was put into place relating to Deepak's income, which the trial court held was voidable. And we don't agree with that. Now, Judge, I want to begin with the issue of the amount of support and specifically the seven pages, approximately seven pages, that Benita devotes in her brief to a preposterous interpretation of the child support statute. Essentially, what Benita would like this Court to believe is that, first off, Section 510 essentially doesn't have to be re-read in conjunction with Section 505. And furthermore, that the child support factors contained under Subsection A2 don't apply in this instance, despite the fact that this wasn't a guideline child support case. You're saying 505A2? Correct. Okay, thank you. She goes on so far as to say that because this case involved an issue under Subsection 3.5, which is where two parties are earning outside of the schedule, that the Court essentially has carte blanche to select any number for child support as it wishes, as long as it is above the ceiling in the schedule and is not an abuse of discretion. So, however, there doesn't have to be any other justification for it. It doesn't need to require a review of the needs of the children, the resources of the parties and the children, the standard of living that the children would have enjoyed had the parties not separated. I'd like to point out something that I think the Court should know as it relates to Benita's position that Section 510 doesn't have to be read in conjunction with Section A2. Benita cites to a single case in support of that proposition, and the case that Benita cites to is a Rule 23 unpublished opinion, excuse me, Order that has no precedential value and has no, and cannot be relied upon this Court. Section 23, excuse me, Supreme Court Rule specifically states that an Order entered under that Rule cannot be used for any precedential value, that it cannot be relied upon by this Court, and I think the fact that she twice relies upon this case, which is Fields v. Davis, that it goes to the credibility of her argument, which is weak, incredibly weak, and should be disregarded by this Court. In the event that the Court were to take the position set forth by Benita, which is essentially that the Court can order any number it wants in child support without taking into consideration the factors under A2, we're left in a situation where this Court would really have nothing to rely upon to overturn an Order. We're left in a situation where future child support Orders are completely arbitrary and pulled out of thin air and really don't require any basis whatsoever other than whatever the whim was of the Court on that day. That is completely contrary to public policy. It's contrary to the statute that's been in place since 1977, and it certainly is not the intention of the child support statute. Now, it's our position that the Court erred by not considering the factors set forth under A2. The Court ruled that it determined the highest amount of child support to be in this instance to be $2,026 payable by petitioner to respondent. It then stated that in consideration of the party's current incomes and other evidence presented at hearing, the Court set the child support at $3,750 per month, retroactive to the date of filing. Was that figure, that $2,000 figure you just cited, was that accurate? The figure that my client had put into evidence was approximately $2,040 and that was based upon the capped amount of $500,000. So the trial court did in fact cite to a number, which was the $2,026 number, which is... It seemed very low to me for two children and this sort of income. Is that a week? I'm sorry? No, that's a month. Is that a week? No, that's a month. Okay. That's a month. Your Honor, but I would point out that this is a case where first off, the children are spending half of their time with the petitioner, with the appellant. So this is at the time that the MSA was entered, there was an allocation judgment where there was not a 50-50 division of parenting time. It did get modified. And so the parties are spending half of the time with my client. The other thing I would point out is at the time that the parties divorced, Benita's income was significantly less. At the time that they had the hearing, it had gone up to approximately $220,000 per year. So the idea that the children can't be taken care of based upon a $220,000 salary with an additional tax-free $45,000 per year, I think is a... I don't think that's accurate. And Judge, the income of the parties isn't the only factor that the court should consider because when you have two higher earning parties... I'm sorry. I don't want to get you sidetracked. I was just talking about the guidelines themselves and I may be off. Oh, I see. You know, Judge, this is what was in the record. This was what was in my client's family law software calculations that were put into evidence. And this is what the court relied upon. I would leave it alone then. Thank you. But I would say that under the Singletary case, which is the case that we did rely upon in our brief, when dealing with... excuse me, that the court relied upon actually, when dealing with above average incomes, the specific facts of each case become more critical in determining whether the guidelines should be adhered to. So the specific facts of the case and what the court should be considering in addition to just the income is the resources of the parties, the needs of the children. Now, an issue in this case is that at no time did Bonita, the appellee, put into evidence the actual needs of the children. There were no dollar amounts put into place by Bonita in every case, almost every case that she relies upon. In those cases, the court heard extensive evidence regarding the needs of the children, what the spending was on gas, the mortgage, food, groceries, everything that's covered by child support. The numbers that Bonita did, not even numbers, the expenses that Bonita relied upon at the hearing that she argued had increased related to travel sports. Now, travel sports are not covered by child support. Travel sports are separate in the statute. They're a separate expense that the parties have to contribute to and that they do under the 65-35 allocation with my client paying the larger share. Likewise, at the time the parties divorced, the children were attending private preschool which was expensive. But at this time, they're now attending public school in the Naperville School District and those costs have, again, they're no longer in place, but also those costs would have been covered separately under the section of the statute relating to extracurriculars, daycare, medical, and so forth. Bonita didn't even put in a financial affidavit. We simply have no idea as to what it costs to raise these kids. Now, Deepak, on the other hand, he did testify as to certain amounts. He testified as to the decrease in the children's costs relating to the travel sports and the daycare. At the time that the marital settlement agreement was entered into, the costs of the children for those items were approximately $24,000 and those had decreased to approximately $12,000. Now, that testimony was not impeached. Bonita did not come in and argue against those numbers that Deepak testified to. So, if you talk about $12,000 that Deepak is covering 65% of, then Bonita's out-of-pocket is $350 per month. So, now we have a situation where Bonita has to come out with $350 per month in terms of the sports, the extracurriculars, and the childcare costs, but her support is increased by $3,000 per month. We don't know where that money needs to go. Judge, I would also argue that when it comes to the standard of living of the children, had the parties not separated, there was really no testimony that would evidence that the children are living in a worse situation or standard of living. In fact, the children's standard of living appears to have increased because there was extensive testimony regarding vacations that the children take with Bonita, which far outweigh the vacations taken by Deepak. So, somehow, receiving what she alleged to be meager amount of support, Bonita was able to sustain this lifestyle for the children. She was awarded the marital residence, which increased in value approximately $300,000. She received Alexis. She received half of Deepak's RSUs for a period of time, which were vesting each year. And so, our position is that the court simply did not hear any evidence from Bonita, which would support this arbitrary $3,750 amount. Counsel, what evidence did you hear of the standard of living that the children would have enjoyed had the marriage not dissolved? I'm sorry, what was your question? What evidence did you hear about what the children would have enjoyed had the marriage not dissolved? I didn't hear any evidence. I reviewed the record. Honestly, the record is very, very thin. I actually take that back. The one item or topic that Bonita talked about was the fact that at the time they were married, she had a mommy's helper, which was somebody who would come and kind of help out. But at that time, the children, they were in preschool and daycare. I mean, these weren't elementary age school children, at least the younger wasn't. And so, I don't think that that in and of itself is something that she should be able to have the significant increase for, especially in light of the fact that at that time, he was exercising more parental time. Well, if they remained married and the husband continued to make this much money, wouldn't they have enjoyed some benefit? Wouldn't the children have enjoyed some benefit just by extrapolation? Well, sure. And I mean, but Judge, at the time that the parties entered into this agreement, she had the right to come in and modify child support up to the capped amount of $500,000. And I think that that's the other issue here, which is that once you reach that level, the court does have to hear evidence and she has to demonstrate that somehow the children are not receiving the benefit of child support. Her lifestyle is different than her lifestyle. I understand your argument, counsel, and I've read it and frankly, reading your response brief, but what about just hitting the lottery? Is that not enough? Because the husband's enjoying the benefit of the extra money. In this case, it's the husband, or I guess they're sharing custody. Why shouldn't the children share in that benefit? Well, because I think, Judge, there's plenty of case law that reflects that just because a party is earning a high income that the children are automatically living a lavish and luxurious lifestyle. In fact, just because he is earning a higher income doesn't mean that he's exercising or living a higher and more luxurious lifestyle. There's plenty of people who have great wealth and are frugal and who drive a Hyundai and who live in smaller homes. I mean, the fact that he earns this income does not in and of itself mean that the children are automatically going to have that kind of a lifestyle. In fact, there was evidence put in that my client does save money for retirement. He does do tax deferred money. He does save into annuities. That's why, in addition to income, it can't be looked at by itself. That's why we have other factors contained in the statute. A lot of the cases, Judge, that I cited to, and that also Benita cited to, talk about downward deviations where the amount of the trial court was so high that the appellate court found, for example, the Scafuri case, the appellate court found that this is too high. This is going to result in a windfall. This is going to be de facto maintenance to the other side. In the Scafuri case, the court held that the $10,000 award, they actually reduced it on its own order to $6,000 per month. Again, I think the burden lies on Benita to demonstrate that somehow the children's needs, not only are the children's needs not being met, but somehow that they are not having the same lifestyle with her that they would have had if the parents had stayed together. At the end of the day, again, they're in the same home. They're taking extensive vacations. I'm going to stop you there, Ms. Allen. I realize you were answering my question, but you're going to have five minutes on rebuttal, so you can close up your argument at that point in time. I'll ask the other justices if they have any questions before we move on to Mr. Cass. Justice Brattani? No. I think you have covered it, taken some of the wind off my sails. How many minutes do I have left? You have five minutes in rebuttal. Okay. Thank you. Mr. Cass? Yes. May it please the court. Justices, counsel, my name is Henry D. Cass, and I represent Benita Patel, the appellee in this matter. The first issue on appeal, and the one that's been primarily discussed during the appellant's oral arguments, is whether or not the trial court abused its discretion in modifying the appellant's court obligation to $3,750 per month. Both in the oral arguments and the opening brief, the appellant makes all efforts to argue that the trial court deviated upwards from guideline support, and that in doing so, the trial court failed both to consider and make the requisite findings concerning the factors in 505 3.4, excuse me, 505A 3.4. And then in support of this argument, as counsel has argued and has argued extensively in the Bush matter, the appellant relies primarily on two cases, and that's interrated marriage of Bush from the 4th district and interrated marriage of Skaferi from the 2nd. Both of these cases are approximately 35 years old and address an antiquated statute, one that is no longer in existence. Then to a lesser extent, the appellant also relies upon interrated marriage of Singletary from the 1st district, still 25 years old. None of these cases, however, instructive for two primary reasons. The most compelling is that Bush focuses on the issue of deviation. And this is, in fact, the first issue, whether or not the court deviated. But the court did not deviate. In fact, it could not deviate. Deviation is addressed by 505A 2, duty of support, and also by 505 A 3.4, which is entitled deviation factors. In fact, 505 A 2 says the court shall determine child support in each case by applying the child support guidelines. The only time you won't apply the child support guidelines pursuant to the statute is unless the court makes a finding that the application of the guidelines would be inappropriate. That's a key term, application of the guidelines. The guidelines were not applied here because there were no guidelines. So we cannot deviate from them. Therefore, 3.4 does not apply. We are not deviating from a guideline. Instead, what happened in this matter is because of the incomes of the respective parties, when we added together the net incomes, it brought us to a figure that exceeded the highest level that set forth in the income share schedule. Well, when that happens, we have to look at 505 A 3.5. Income in excess of, not a deviation from, income in excess of the schedule of basic child support obligation. 3.5 is separate and distinct from 3.4 and even 505 A 2. It simply holds that the court may use its discretion to determine child support. It doesn't say use its discretion to deviate from the guidelines. Guidelines is never used in the statute. The word deviation is not used. It says that the court will use its discretion to determine child support. Counsel, is it your suggestion then under 3.5, there are no factors that are required? It's just a totality of the circumstances in some fashion? Yes. In a word, yes. And this isn't my position. It's simply what the statute says. Now, that is certainly not to say, Justice Bertani, that is certainly not to say that the court can't take those things into consideration. Certainly, it would be within reason that the court may take those things into consideration. The needs of the child, the resources, the parties. But otherwise, it is, as Your Honor just stated, the totality of the circumstances, the credibility of the witnesses. It is the testimony that's presented, any documentary evidence, the memos, the calculations of the parties, and any and all evidence that's produced to the court. This is what the court has. But is there a requirement within 3.5 that states that the court must take these things into consideration? There is not. The only requirement under 3.5 is that the court is told that it cannot award a child support amount that is less than the highest level of combined net income set forth in the schedule of basic child support obligation. That is the only requirement upon the court. Certainly, the court has to determine whether or not there's a substantial change in circumstances, which there was four in this case. And certainly, the court has to determine whether or not there is a guideline support amount in complying with 505A1.5. But the court determined that it was beyond the child support guidelines. It was beyond the income support schedule. And therefore, the applicable statute is 3.5. Now, the legislature knows how to include explicit requirements into a statute when that is its intent. The General Assembly's decision not to include those requirements demonstrates that it did not intend for the statute to contain them. A court may not depart from the statute's plain language by reading into the law exceptions, limitations, or conditions that the legislature did not express. Rather, establishing the criteria for governing child support obligation following a dissolution of marriage, that's for the legislature. And there is not to be a change in law of this state or this matter, if there is to be a change, it is for the legislature to discern. It's not for we as the litigants or the courts to bring about that change. Making your theory as true and the abuse of discretion standard that's set forth in the statute itself, I assume, I mean, an award has to be based on evidence, does it not? Certainly. And if I can ask, other than the increases of income of both parties and other than struggling to make ends meet, what other evidence is there of record to support that use of discretion? The other evidence aside from the income of the parties? Yes, the judge decided based on the parties and other evidence. I'm not asking you to look in her mind, I'm asking what's in the record. What's in the record? There's not a lot of explanation for it, is there? Certainly. Of course, what we could also take away from that is that previously the child support that Ms. Patel was receiving was $789. So, it's... It's not a make-up child support. We're not asking for some retroactive compensation here, are we? No. Only from the date that notice was given of the desire to modify child support. That's the only retroactivity at issue here. But, I guess, to try to answer Your Honor's question, this is like Sagan's razor. The absence of evidence is not the evidence of absence. At the time, Ms. Patel was receiving $789, that could have been the reason why the children weren't living a more extravagant or full life, because that is the amount that she was limited to, while Mr. Patel is now enjoying a much higher standard of living. And I understand that the issue of frugality can be made. There was a reference to one who may drive a Hyundai, and certainly that's true. Someone can decide to not live as extravagant a lifestyle and live below their means. They may do that. But the Ackerley Court specifically addressed this in declining to follow Bush. They stated that courts are not required to equate large incomes with lavish lifestyles. We have no quarrel with this proposition, however, that a court is not required to draw such an inference says nothing about whether a court may do so. The court went on to say that whether the payor leads a frugal lifestyle is only pertinent to half of our inquiries set forth in 505A2, which focuses on both the needs and resources of the non-custodial parent. Not just the needs of the child, not just the needs of the parent, but the resources as well. And even if the payor's needs are few, his resources are considerable. And then in some assuming the frugal lifestyle for the payor is not sufficient to tip the balance in his favor, such that the trial court abused its discretion in setting child support as it did. So the frugality is only one of the instances that the court may look at, but that's not the entire equation. And also direct the court to enrave the marriage return, which stated that Section 505A was intended to protect the rights of the children to be supported by their parents in an amount commensurate with the parent's income. Now, the only evidence that is required, and I understand the conundrum that the court is addressing, and that's does there need to be evidence above and beyond what's set forth in 1.5. Again, the short answer is no. Does that mean that there shouldn't be? No, not necessarily. There certainly could be. But it's more, it is more important, I suppose, for the party who is seeking or fears that the child support may be set at a higher amount for them to be the ones to argue and present evidence as to why it should be a lower amount. Ms. Patel met her burden of proof. She met her burden of proof in stating that there was a substantial change in circumstances. She presented all the factors that were set forth in 505A 1.5, and that's all that she needed to do. Now, there was evidence above and beyond that, but to that extent she's met her burden of proof. To say that she had a higher burden of proof, I see nowhere in the statute that says that, nor do I in the case law. It simply doesn't exist. She met her burden of proof. Now, again, could either of the parties have made a different argument? Could Mr. Patel have said, I worry that because my income, as of earlier that year, was already over $1.1 million, and that's not including the income of his new spouse, which was over $300,000, could Mr. Patel have said, well, I'm concerned about this, and so I want to make every argument possible? Certainly. But, again, the burden is placed and stated that Ms. Patel did not enter her financial affidavit, and it's argued in the brief that therefore this must have been something that was detrimental to her. Well, bear in mind that Mr. Patel, in his case in chief, certainly could have entered it. He had every opportunity to enter it, but chose not to. In addition, if he wanted to prove that the amount of child support under the court's discretion should have been a lower amount, he could have entered his own financial affidavit, but he chose not to do that either. Those things, if they were beneficial to him, certainly would have raised the question of why weren't these things entered. Now, there are two other cases that are primarily relied upon by the appellant, and one is the Scafuri case, and I know that there's something very interesting about the Scafuri case. In Scafuri, the payor had, according to the court in the opinion, had a net annual income of $375,000. Now, that's a net annual income. It was ordered to pay $10,000 per month. Now, the appellate court did decide that they were going to lower that amount to $6,000 for three children, which equated to $2,000 per child. Now, that was back in 1990. In our case, assuming the appellant's gross annual income is $874,000, his net income is several hundred thousand dollars more than the $375,000 in Scafuri, and yet his two children are receiving less than $2,000 per month. That certainly seems to suggest that Scafuri actually would have agreed that this was not an abuse of discretion. Another interesting factor is Singletary is relied upon, and Singletary is the very same thing. In this case, it's only one child, and that child, again, receives $2,000, very similar to Scafuri. But this was, again, back in 1997, several decades ago. And in this case, this reward was based on the payor's gross annual income of approximately $400,000. I believe it was a little bit more than that. But that's half of the gross annual income, at least half of the gross annual income, of Mr. Patel in this case. And yet again, the children in this case are receiving less than that amount per child. So once again, I think the Singletary court would have agreed that this is not an abuse of discretion. Another important factor that we need to consider when evaluating these cases is the age of the cases. These cases are approximately 35 years old, and they predate the 2017 income shares model. Meaning when they're talking about the windfall, when they're talking about the amount of support, remember that they were only taking one portion of what we now take into consideration into consideration. That is to say that they were only taking into account, unless they were deviating, they were only taking into account the payor's income. So if we had a situation where, let's say, the payee was making $200,000 and the payor was making $200,000, if we applied the guidelines at the time, we would simply take 20% of the payor's income and move it to the payee. Well, this could have resulted in something absurd, which is what some of these cases address. That could have been a windfall because now the payor actually has less money than the payee. And like in Bush, they were each making similar incomes than their professionals. But we don't have those factors anymore. As of 2017, we do take into consideration the payee's income. And as the payee increases his or her income, so does the child support lower. And we don't just take into consideration the payee's income. We also take into consideration the amount of overnights that the parents enjoy with the children. And the more overnights a parent enjoys, the further down it's reduced. So these factors did not exist under Bush or under Singletary. They did not exist under Scafari. The court in this situation was presented evidence. The appellant argued that support should have been around $1,727. The appellee argued that if we extrapolated out the income, if we extrapolated out the guidelines, even though the guidelines have ended, then the support should be $4,344. Assuming that Mr. Patel was making $874,000 and Ms. Patel was making $1,207. So extrapolating out those guidelines, the amount of support would have been $4,344. The court in this matter used its discretion to determine somewhere in between the highest level of income under the income support schedule and that number, and came to $3,750. I do not believe that can be seen as an abuse of discretion. Thank you so much, Your Honors. Thank you, sir. Let me take a peek here real quick. I don't have any questions. I've already asked mine. Thank you. Thank you so much, Your Honor. Yes, thank you, Judge. I'm going to start off by addressing counsel's argument relating to the statutory interpretation. Essentially, he's arguing that his interpretation of the statute, which is that any parties that are earning above the guidelines, above $500,000, any wealthy individuals essentially have no, excuse me, that the court has complete free reign to order any amount of support it wants. My statutory interpretation is that the court is still bound by Section A-2, and Your Honor, the justices should consider the interpretation by counsel to be the absurd result, as he so calls it. I want to point to the language specifically of A-2, which states that the court shall determine child support in each case by applying the guidelines unless the court makes a finding that the implications of guidelines would be inappropriate, which we know it is in this case, and after considering the best interest of the child in evidence, which shows relevant factors, including one or more of the following. Again, that's the guidance for the court. The guidance for the court continues to be those factors contained under A-2. The result that would come into effect if counsel's position was accepted by this court would again be that we would have unfettered amounts of child support that would go unchecked, and that this court could really never overturn, and that is not the purpose of the legislature. I want to point out a few of the, I don't want to call them errors, but a few details that counsel raised which weren't entirely accurate. He brought to the court's attention that Benita's support before this was $789 per month. While that was her base support, there was a mechanism in place where she received additional support between the $250,000 base income that Deepak was earning at the time and the $500,000 cap. She actually received 6% of additional income, the net of his additional income. Her support wasn't just the $789. She actually received much more than that. I would point out to the fact that counsel argues that it was my client's burden to put in Benita's financial affidavit to somehow show what the children's expenses and needs were. This was her motion to modify. It was her burden. It was her job to persuade the court of her position. That was not Deepak's obligation, and he had no duty to put into evidence her financial affidavit. And then, Judge, finally, as it relates to the cases which counsel explained to the court and described to the court, every case has its own facts and each case has to be determined based upon the specific facts and the specific evidence for that case. The same has to happen in this instance. Just because in the Singletary case, the amount that the party was earning was a different amount that Deepak is earning today, it's really of no relevance. All of these cases say the same thing. They all say that the court has to balance the competing factors, that the court has to look at the specific facts of the case, that the court needs to have a justification and a basis for its ruling, and that the justification and basis should be explained. And it doesn't necessarily have to be in written findings in a court order, but it needs to be in a record that an appellate court can review. And that did not happen. And that... But also all reviewed in the context of an abusive discretion standard, which means you're going to have, by definition, almost widely varying decisions, right? Correct. Exactly. And so, Judge, I would respectfully request that this court use its discretion and use its ability to modify the child support to the amount that was requested by Deepak in the original hearing. I think that that would be judicially efficient and would not require the parties to return to the trial court for an additional hearing. However, in the alternative, if the court were not willing to do so, I think that having a hearing on remand as to what the needs of the children are and applying the income of the parties at this time, but keeping the cap would be appropriate. Thank you. Ms. Dallin, what would you ask us if we were to remand the case to the trial court? What would you ask us to direct them to do? Well, I... You too. So the cap should be... The reason the cap should be in effect, because the cap doesn't modify the child support. The cap doesn't bar the court from going above and beyond the cap if it chooses to deviate above the cap. So the cap in and of itself isn't bargaining away any of the rights to the children. I would ask that the court apply the cap and apply the factors set forth under A2 and make specific findings or take into consideration what the needs of the children are, what the lifestyle of the children would be, but also to keep the cap in effect. Thank you, Ms. Dallin. Justices, any other questions? All right. Counsel, thank you very much. We appreciate your arguments on a somewhat difficult topic with not a great deal of case law out there. So we're going to take this under advisement and issue a written decision within... in due course, I believe is the appropriate language. You guys have a good afternoon. Thank you. Thank you so much, Albie. Thank you, Your Honors. Thank you, Counsel.